CALEB JONES, Plaintiff in Error, *v.* MARSHAL SMITH *et al.*, Defendants in Error.

### ERROR TO SCOTT.

Where a judgment debtor agrees to give notes and mortgages to secure his creditors, representing his title to the property to be mortgaged, as being clear and indisputable, and they receive the mortgages, relying upon his statement, but ascertaining subsequently that they have been deceived, they may refuse to acquiesce in such arrangement, and issue execution on their judgments, and he cannot restrain them.

THIS is a suit in chancery, and the facts, as proven, are as follows:

Complainant, Jones, became indebted to James Gillham, and gave his note, and Marshal Smith signed his note, as security. He also became indebted to Abijah Felton, and gave his note, and said Smith signed with him, as security.

Jones and Smith were sued upon these notes, and two judgments were rendered, and executions were issued, and levied upon three tracts of land belonging to Jones.

Jones paid those judgments, while the levy was in force and the executions were in the hands of the sheriff, in the following manner:

Gillham and Felton took Jones' individual notes for the judgments, payable in one year, at legal interest; and to secure the payment of those notes, Gillham and Felton took two mortgages (one to each of them), upon the three tracts of land belonging to Jones, and he paid the cost of both suits; and the sheriff was ordered by Gillham and Felton to return said executions without further proceedings; which was done.

A few weeks after, Gillham and Felton sued out alias executions upon those same judgments, and caused them to be levied upon those three tracts of land belonging to Jones, and other lands, belonging to Smith.

The sheriff, by the order of Gillham and Felton, advertised

and sold the property, under those second executions, in about twenty days from the time they were issued. And defendant, Smith, attended the sale, and purchased the three tracts of land belonging to Jones, for the full amount of said judgments and cost, and after the day of redemption expired, procured sheriff's deeds therefor. Gillham and Felton thus received their money, by sale of the property, within two months after the judgments were paid, and still retained Jones' note and mortgage given therefor.

Smith, who purchased this land belonging to Jones, is the defendant in these executions, and was fully informed at the time he made the purchases that said judgments and cost had been paid as above stated.

After Smith obtained deeds for this land, he filed this bill in chancery, alleging a mistake in issuing those second executions, as to date, and prayed that this mistake be corrected. The bill also alleges that Jones and wife had, before the date of the judgments aforesaid, fraudulently conveyed this land to a daughter; and that the daughter married, and then joined with her husband in a reconveyance of the land to her father. But a mistake had occurred in the acknowledgment, as to the wife, which rendered the deed, as to her, void, and the bill prays that the title to this land be perfected in Smith, by setting aside the deed from Jones and wife to the daughter.

The bill also charges that before said land was sold by the sheriff to Smith the same land had been sold for tax, to one Rucker, and by him to Armitage. And the bill alleges that said tax sale was void, and conveyed to Armitage no title.

Jones defended this suit in chancery, and filed an answer setting forth all these facts, admitting the tax sale to Armitage was void, and was not an incumbrance upon the land. He also filed a cross bill, making Smith, Gillham and Felton parties, and prayed that he might be permitted to redeem the land from the mortgages given to Gillham and Felton, and to pay to them the notes and interest, and that the contract of which said notes and mortgages were the evidence, might be affirmed as against those parties.

The bill also prays that the second executions issued on these judgments, and the sale and sheriff's deeds for said land to Smith, be set aside. That an account of the rents and profits of said land occupied by Smith, be taken, and the amount set off against the amount due upon said notes and mortgages, and that he, Jones, be permitted to pay the balance due, if any, and the land be restored to him.

The Circuit Court, upon motion of Smith, dismissed this cross bill without hearing, upon the ground that Jones had no right

to file the same in this case, and proceeded to make a decree as prayed for by Smith in his original bill.

Jones took the case to this court, and this decree was reversed, and it was directed that the cross bill was properly filed, and that if Jones proved the facts therein alleged, he was entitled to the relief therein prayed. [See *Jones* v. *Smith and others,* 14 Illinois 279.]

The Circuit Court, upon the second hearing, again dismissed said cross bill, and affirmed its former decree.

McConnel, for Plaintiff in Error.

McClure, for Defendants in Error.

Caton, J.   The pleadings in this suit, so far as they had then progressed, sufficiently appear in the report of the case when it was before us on a former occasion. *Jones* v. *Smith,* 14 Ill. 229.   After the suit was remanded, an answer was filed to the cross bill denying that the notes and mortgages were received in satisfaction of the judgments, and this is the point principally controverted in the case.   The Circuit Court found that they were not, and dismissed the cross bill and granted the relief prayed for in the original bill.   After a careful examination of this evidence, we are very clearly of opinion that the Circuit Court has decided the case correctly.   That the verbal arrangement between the parties to the judgments was, that the notes and mortgage should be taken in satisfaction of the judgments, may not be disputed, but this was upon the undoubted understanding that the title to the mortgaged premises was clear and undisputed, affording a good security to the judgment debtors, for the amount due them.   Such was the substance of the arrangement between the parties.   The notes and mortgages were executed in pursuance of this arrangement, and sent to the judgment creditors.   Gillham received the one to him, and went and examined the title and found it defective.   The fee was in fact in Mrs. Armitage, a daughter of Mr. Jones, and there was a tax title outstanding against the property mortgaged.   The agent of Tilton, who had made the arrangement for him with Jones, was not at home when the mortgage was left at his house. Upon his return he took the mortgage to get it recorded, but before that was done he also discovered the defect in the title. Both judgment debtors notified Jones that they would not accept the notes and mortgages in satisfaction of their judgments. They immediately sued out executions on their judgments, which they caused to be levied on the premises in controversy, and the sheriff advertised the same for sale.   At the time appointed fo

the sale, Jones appeared and asked a postponement, to give him an opportunity of clearing up the title, and said if he did not get up the tax title he would make no further opposition to the sale. The time was given. He either could not or would not remove the incumbrance, and at the time then appointed, the premises were sold without objection by Jones. Indeed, it seems very clear to my mind, from the evidence in this record, that Jones did not act with frankness and sincerity towards Gillham and Felton in that transaction. While he assured them that he had a clear title, he knew that his son-in-law, Armitage, had a tax title, and the fact is also established by Armitage's own testimony, that he had procured that tax title for the benefit of Jones himself. Indeed, Jones cannot be exonerated from the direct charge of fraud in the transaction. While he sought to get these judgments satisfied by the execution of the mortgages, he was contriving to defeat the title under the mortgages by means of the tax title, which his son-in-law held for his benefit. Such a transaction can be sustained in no court of justice, to say nothing of the fraudulent conveyance which he had previously made to his daughter, Mrs. Armitage. With no sort of propriety could we hold, under such circumstances, that the execution of the mortgage operated as a satisfaction of the judgments. They were agreed to be accepted as a satisfaction, only upon the condition that the title was good. The condition failed, and hence there was no satisfaction. The arrangement was made upon the faith of the representations of Jones, and without examination by the judgment creditors. So soon as they discovered the fraud, or the defect of title, they repudiated the arrangement, as they had a right to do, when they were immediately remitted to their original rights upon the judgments. Notwithstanding the unfairness of his conduct, they certainly acted with indulgence towards Jones, and evinced no disposition to get out of the agreement they had made with him. They postponed the sale at his request, to give him an opportunity to clear up the title, in which event they were still willing to receive the notes and mortgages in satisfaction of the judgments, although they were under no obligations to do so. After all this, he refused or neglected to remove the incumbrance, and thus comply with his agreement. He then stood in no position to claim that the judgments were satisfied, either in law or in sound morality. He cannot be allowed thus to take advantage of his own wrong. The allegations of the cross bill, that the judgments were satisfied by the execution of the notes and mortgages, were in no sense sustained, and it was properly dismissed.

The mistake in the execution, which is sought by the original bill to be corrected, is clearly made out, as also that the deed to

Mrs. Armitage, was not *bona fide.* Indeed, no controversy has been seriously made on these points, but the defence has rested upon the case made by the cross bill, which, as we have seen, is not sustained by the proof. The court properly granted the relief sought for by the original bill.

The decree must be affirmed.

*Decree affirmed.*